UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

OCT 2 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-666-GWU

PAULINE J. MOSES,                                                      PLAINTIFF,

VS.                                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Moses

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Moses

>First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work.
Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to
make out a prima facie case by proving that he or she is unable to return to work.
Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th
Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide
that an individual with only off-and-on work experience is considered to have had no
work experience at all. Thus, jobs held for only a brief tenure may not form the basis
of the Commissioner's decision that the plaintiff has not made out its case. Id. at
1053.

Once the case is made, however, if the Commissioner has failed to properly
prove that there is work in the national economy which the plaintiff can perform, then
an award of benefits may, under certain circumstances, be had. E.g., Faucher v.
Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

5

Moses

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Moses

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Moses suffered from a polysubstance abuse disorder,[1] a depressive disorder and an anxiety disorder (Tr. 21) and was, accordingly, limited to simple, non-detailed tasks where public and coworker contact was casual and infrequent, where supervision was direct and non-confrontational and where the changes in the workplace were infrequent and gradually introduced (Tr. 19).  He did not believe that the plaintiff had a "severe" physical condition, but based on her slight stature, he believed she could perform no more than light level work.   (Tr. 16, 18).   Based on vocational expert (VE) identification of compatible jobs in significant numbers, the ALJ determined that Moses was not disabled.  (Tr. 21,22).

---

[1]As per Publ. L. 104-121, substance abuse can no longer be a proper basis to award benefits.

Moses

The plaintiff does not argue with the characterization of her physical condition and this seems appropriate. Although Moses was intermittently noted to have physical complaints related to hypothyroidism and musculoskeletal conditions, descriptions of almost all physical examinations during the relevant time frame did <u>not</u> contain obvious musculoskeletal, neurological, respiratory, skin, cardiac or pulse clinical abnormalities (e.g., Tr. 203-224, 317-334, 353-354). The plaintiff had an apparently abnormal CT scan of the brain, described as possibly the result of post traumatic pathology (Tr. 242) after a domestic disturbance (Tr. 223), but no functional restrictions were commented upon by treating sources. Indeed, at one mental health-related hospitalization in 2003, her attending physician cited "no restriction of exercise." (Tr. 351). Medical Reviewer P. Saranga opined that the plaintiff had no "severe" physical impairments. (Tr. 269). Thus, any consideration of a physical function limitation by the ALJ was rather gratuitous.

As far as her mental condition was concerned, the plaintiff's case suffers as the majority of relevant <u>mental health specialist</u> evidence concerns substance abuse, rather than other mental conditions

Records from the Baptist Regional Medical Center show that the plaintiff was admitted at the facility in February, 2002 for help with her drug addiction. (Tr. 190).

8

Moses

Her admission drug screen was positive for benzodiazepines,[2] marijuana and opiates. (Tr. 189). Polysubstance dependency <u>and</u> a dysthmic disorder with superimposed situational depression[3] were diagnosed. (Tr. 191). The plaintiff's intellect was estimated to have been average and her memory intact on discharge. (Id.).

Cumberland River Comprehensive Care Center (CRCCC) records show that the plaintiff failed to follow up with outpatient counseling and her case was terminated. (Tr. 194).

The plaintiff underwent a consultative psychiatric examination in August, 2002. (Tr. 195). The plaintiff reported having performed "real well" in regular classes in school. (Tr. 197). She reported a history of depression as well as narcotic and alcohol dependence. (Tr. 196, 197). She had "multiple" public intoxication and DUI charges. (Tr. 198). Eggerman, the examiner, described her as cooperative, with logical thoughts, an estimated low average IQ and a moderately anxious affect. (Tr. 199-200). He felt that she minimized her substance dependence

---

[2]These are any of a group of minor tranquilizers, as per Dorland's <u>Illustrated Medical Dictionary</u> (27th Ed.) at p. 2000.

[3]The plaintiff had reportedly been recently arrested as well. (Tr. 190).

9

Moses

(Tr. 199), which he felt was actually her primary diagnosis (Tr. 200). Considering this and her anxiety disorder, however, he felt her GAF could be rated as 65-70.[4] (Id.).

Her family doctor, Mehdi Poorkay, noted many diagnoses of anxiety, but without any detailed interview findings or objective observations of abnormalities in her judgment, insight, affect or memory despite the blanks provided on the progress note forms. (Tr. 204, 206, 208, 210, 212, 214, 216, 218, 220, 222, 224, 226, 228, 230, 232, 234, 318, 320, 322, 324, 326, 328, 330, 334, 337, 338, 340, 342).

Medical Reviewers Laura Cutler (Tr. 254) and Jay Athy (Tr. 270) felt the plaintiff's mental problems other than substance abuse to be non-severe.

More CRCCC records from 2003 generally describe the plaintiff regularly as neat, cooperative, attentive, oriented with an intact memory and normal psychomotor activity. (Tr. 288, 290, 293, 294, 298). In July and August, 2003, her psychiatrist had described her as "doing well" with a stable mood (Tr. 302) or with a moderate GAF of 60 and the possible diagnosis of sedative abuse (Tr. 305). In the next two months, when the plaintiff described situational stressors such as a divorce and her brother being hit by a truck (Tr. 289) and her spouse having cancer (Tr. 291), the same psychiatrist completed a form showing severe limitations (Tr. 306-308). Helen Goins, her therapist, completed a form in October suggesting severe restrictions (Tr.

---

[4]This level of GAF is consistent with "some mild symptoms . . . but generally functioning pretty well" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

10

393-315); Goins indicated that the problems "became unbearable in 2000" (Tr. 315), although she had obviously not seen her all that time, and despite her last progress note referring to the patient as clean, stable, alert, oriented, with good eye contact, intact memory, insight and judgment, and reporting feeling "some better." (Tr. 289).

The plaintiff was hospitalized again at the Baptist Regional Medical Center in June, 2003. (Tr. 350). Her insight and judgment were described as adequate, as was her memory. (Tr. 353). Intellect was said to be "average or better." (Id.). She sought help for increasing depression, but the discharge diagnostic impression was of major depression, substance abuse and possible dysthymia. (Tr. 350). Her highest GAF for the past 12 months had been 60, which was also her GAF upon discharge. (Id.).

Finally, Medical Expert John Goff provided answers to interrogatories, and reviewed the mental health records. He did not believe that Listing of Impairment criteria had been established and identified specific discrepancies in the CRCCC material. (Tr. 373, 374). He indicated that there would be "some" difficulty working in large groups of people, and that work in a quiet or low pressure environment would be "helpful." (Tr. 375).

In view of the wealth of information suggesting that the plaintiff's mental problem was substance abuse, John Goff's review of the record and analysis of the

11

Moses

CRCCC therapy notes and moderate GAFs, the Court must conclude that the plaintiff's mental status was adequately assessed.

The decision will be affirmed.

This the ___25___ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12